**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| TINA KAYE WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV1239 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Tina Kaye Ward, brought this action pursuant to the
Social Security Act (the "Act") to obtain judicial review of a
final decision of Defendant, the Commissioner of Social Security,
denying Plaintiff's claim for Disability Insurance Benefits
("DIB"). (Docket Entry 2.) Defendant has filed the certified
administrative record (Docket Entry 8 (cited herein as "Tr. __")),
and both parties have moved for judgment (Docket Entries 11, 13;
see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14
(Defendant's Memorandum)). For the reasons that follow, the Court
should enter judgment for Defendant.

**I.  PROCEDURAL HISTORY**

Plaintiff applied for DIB, alleging a disability onset date of
December 31, 2015. (Tr. 212-18.) Upon denial of that application
initially (Tr. 80-93, 109-12) and on reconsideration (Tr. 94-108,
117-24), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 125-27). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 41-79.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 19-34.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 188-93, 319-20), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2021.

. . .

2. [Plaintiff] engaged in substantial gainful activity during the following periods: January 2016 through March 2016.

. . .

3. [ T]here has been a continuous 12-month period during which [Plaintiff] did not engage in substantial gainful activity. The remaining findings address the period [Plaintiff] did not engage in substantial gainful activity.

4. [Plaintiff] has the following severe impairments: degenerative disc disease with radiculopathy, status post surgery; and bursitis and osteoarthritis of the right hip.

. . .

5. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

2

. . .

6. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except: she occasionally can balance, crouch, kneel, stoop, and climb ramps, stairs, ladders, and scaffolds; she frequently can push, pull, reach (other than overhead reaching), handle, finger, and feel bilaterally; she occasionally can reach overhead; she occasionally can push and pull and operate foot controls with her lower extremities; she needs to avoid work environments with bright lights and hazards such as unprotected heights, machines with moving mechanical parts, and driving employer vehicles; she will be off task five percent of the day due to alternating between sitting and standing and or attention and concentration lapses; she will miss work once a month.

. . .

7. [Plaintiff] is capable of performing past relevant work as a stylist, [Dictionary of Occupational Titles ('DOT')] number 332.271-018, which is light work, with a[ Specific Vocational Preparation ('SVP')] of 6. This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity.

. . .

8. [Plaintiff] has not been under a disability, as defined in the . . . Act, from December 31, 2015, through the date of this decision.

(Tr. 24-34 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited."

<u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

4

adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

claimant is 'severely' disabled.  If not, benefits are denied."
Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[3]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[4]

## **B.  Assignments of Error**

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's failure to properly evaluate and account for [Plaintiff]'s mental limitations in the RFC is harmful error" (Docket Entry 12 at 5 (bold font and single-spacing omitted)); and

2) "[t]he ALJ's failure to conduct a proper function-by-function analysis of [Plaintiff]'s impairments and failure to provide a logical bridge between the evidence in the record, his conclusions and his RFC findings is error that prevents the ALJ's conclusions regarding [Plaintiff]'s RFC from being supported by substantial evidence" (<u>id.</u> at 12 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 14 at 5-24.)

_____

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.,</u> <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

## 1. **Mental Limitations**

Plaintiff's first assignment of error maintains that "[t]he ALJ's failure to properly evaluate and account for [Plaintiff]'s mental limitations in the RFC is harmful error." (Docket Entry 12 at 5 (bold font and single-spacing omitted).) More specifically, Plaintiff asserts that "the ALJ fail[ed] to analyze the impact that [Plaintiff]'s mild limitations in the functional area of interacting with others and/or adapting or managing oneself would have on her RFC" and "provide[d] only a cursory discussion of the evidence that [the ALJ] contend[ed] support[ed] his conclusions." (Id. at 6 (citing Tr. 26-27).) According to Plaintiff, "the ALJ's failure to account for these limitations in the RFC is harmful . . . since the ALJ determined that [Plaintiff] could return to a skilled position that requires a high degree of social interaction with clients." (Id.; see also id. at 6-7 (citing Selected Characteristics of Occupations Defined in the Revised [DOT], Pt. A, § 09.02.01 ("Cosmetology"), No. 332.271.-018 ("Hair Stylist") (U.S. Dep't of Labor 1993) ("SCO"), for proposition that job of Stylist requires frequent talking and hearing), 8 (citing DOT, App'x B ("Explanation of Data, People and Things"), 1991 WL 688701, to argue that "job requirements of Stylist include significant social interaction, customer service, reasoning and problem solving abilities").) Plaintiff points out that this Court has found remand appropriate under Mascio v. Colvin, 780 F.2d 632, 638 (4th

9

Cir. 2015), where the "'ALJ[] fail[ed] to account for mild limitations in the RFC.'" (Id. at 11 (quoting McMichael v. Colvin, No. 1:15CV528, 2016 WL 4556768, at *12 (M.D.N.C. Aug. 31, 2016) (unpublished) (Webster, M.J.) (brackets added), recommendation adopted, slip op. (M.D.N.C Sept. 29, 2016) (Schroeder, J.), and citing Ashcraft v. Colvin, No. 3:13CV417, 2015 WL 9304561, at *6-11 (W.D.N.C. Dec. 21, 2015) (unpublished), and Wedwick v. Colvin, No. 2:14CV267, 2015 WL 4744389, at *22-23 (E.D. Va. Aug. 7, 2015) (unpublished) (district judge adopting magistrate judge's recommendation)).) Plaintiff's contentions miss the mark.

The United States Court of Appeals for the Fourth Circuit, in finding that an ALJ failed to account for the claimant's moderate limitation in concentration, persistence, or pace ("CPP") in the RFC, held in Mascio that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's
> moderate impairment in [CPP] always translates into a
> limitation in the RFC. Rather, Mascio underscores the
> ALJ's duty to adequately review the evidence and explain
> the decision . . . .

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Mascio,

10

780 F.3d at 638 ("Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in [CPP] at step three does not translate into a limitation in [her RFC]." (emphasis added)).

Furthermore, it remains unclear whether Mascio applies to mild as opposed to moderate limitations, and to limitations in broad functional areas other than CPP. As an initial matter, contrary to Plaintiff's assertion that Wedwick remanded under Mascio due to the ALJ's failure to address a mild limitation in CPP (see Docket Entry 12 at 9), that court actually addressed a moderate limitation in CPP, Wedwick, 2015 WL 4744389, at *22. Furthermore, although McMichael and Ashcraft both remanded for an ALJ's failure to adequately account for mild limitations in the broad areas of functioning, see McMichael, 2016 WL 4556768, at *2-6 (CPP); Ashcraft, 2015 WL 9304561, at *6-11 (daily activities, social functioning, and CPP), many cases exist to the contrary, see Martin v. Saul, No. 9:18CV3172, 2020 WL 2813788, at *8 (D.S.C. Jan. 16, 2020) (unpublished) (noting that "most district court decisions [in the Fourth Circuit] have found to the contrary"), recommendation adopted, 2020 WL 1329395 (D.S.C. Mar. 23, 2020) (unpublished); Morrison v. Berryhill, No. 1:16CV337, 2018 WL 1311207, at *5 (W.D.N.C. Feb. 8, 2018) (unpublished) (finding that the plaintiff's "heavy reliance on Mascio . . . [wa]s misplaced" and noting that, since "about a month after the Mascio decision," many cases in the Western District of North Carolina "have held that the requirements

11

of Mascio do not necessarily apply where a plaintiff is found to have *mild* limitations in CPP"), recommendation adopted, 2018 WL 1308139 (W.D.N.C. Mar. 13, 2018) (unpublished); Thorp v. Berryhill, 3:16CV70, 2018 WL 325318, at *3 (W.D.N.C. Jan. 8, 2018) (unpublished) (holding that the "case differ[ed] markedly from Mascio" because the plaintiff "had mild difficulties maintaining [CPP]" (emphasis added)); Williamson v. Berryhill, No. 7:16CV284, 2017 WL 4293408, at *5 (E.D.N.C. Sept. 27, 2017) (unpublished) (deeming the "plaintiff's reliance on Mascio [] inapt" where ALJ found "only *mild* limitations in activities of daily living, social functioning, or CPP"); Franklin v. Berryhill, 1:16CV211, 2017 WL 4274190, at *2-3 (W.D.N.C. Sept. 26, 2017) (unpublished) ("This Court does not interpret Mascio's holding as applying to all restrictions."); Gilbert v. Berryhill, 5:16CV100, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017) (unpublished) ("As this case concerns only 'mild difficulties,' it does not trigger the RFC discussion requirements of Mascio per se." (emphasis added) (internal quotation marks omitted)); Guest v. Colvin, No. 1:15CV776, 2016 WL 4007612, at *6 (M.D.N.C. July 26, 2016) (unpublished) (expressing "doubt [] as to whether Mascio's holding with regards to [CPP] should apply to" a case involving mild limitations in social functioning, "particularly given that the Fourth Circuit made clear its CPP-based holding rested on the distinction between the ability to perform simple tasks and the

12

ability to stay on task, and such a distinction does not clearly apply in the social functioning context" (internal citation omitted), recommendation adopted, slip op. (M.D.N.C. Aug. 24, 2016) (Schroeder, J.); Thompson v. Colvin, 1:15CV234, 2016 WL 3610161, at *3 (W.D.N.C. July 1, 2016) (unpublished) ("The Court does not read Mascio to impose a duty on ALJs to automatically or necessarily account for mild limitations in the RFC." (emphasis added)). The weight of post-Mascio authority among the district courts in the Fourth Circuit does not favor extending Mascio to mild limitations in the broad functional areas.

Moreover, even assuming Mascio applies to 1) mild limitations in the broad areas of functioning (i.e., the lowest of four levels above "none"), and 2) functional areas other than CPP, Plaintiff has not shown prejudicial error here. First, the ALJ included an allowance for Plaintiff to remain off-task for up to five percent of the workday in the RFC (see Tr. 28), and Plaintiff neither argues that such an allowance fails to account for her mild deficits in social interaction and adaptation, nor suggests what additional limitations the ALJ should have included in the RFC to account for those mild limitations (see Docket Entry 12 at 5-12). That failure precludes relief. See Humphries v. Colvin, No. 3:15CV376, 2016 WL 8223429, at *5 (W.D.N.C. Oct. 17, 2016) (rejecting similar claim where "it d[id] not appear that [the p]laintiff [wa]s actually alleging based on contradictory evidence

in the record that she ha[d] limitations that [we]re not addressed by the RFC; rather, she [wa]s simply arguing that her 'at most, mild limitations' [we]re cause for remand because the ALJ's decision d[id] not apply the same analysis the Fourth Circuit [in Mascio] would require for review of 'moderate' limitations in [CPP]" (emphasis added)), recommendation adopted, 2017 WL 525666 (W.D.N.C. Feb. 8, 2017) (unpublished).

Second, the ALJ's step two evaluation cites to substantial evidence to support the lack of additional mental restrictions in the RFC. The ALJ provided the following analysis to support his findings of mild limitation in interaction and adaptation:

> The second functional area is interacting with others. In this area, [Plaintiff] has mild limitation. In her function report, [Plaintiff] denied having problems getting along with others. Her husband reported that [Plaintiff] had engaged in a verbal altercation with an employee at her workplace. [(Tr. 274.)] However, that appears to be an isolated incident. Her husband also checked that [Plaintiff] did not have a problem getting along with others and noted that she was working three to five days a week. He also noted that she got along well with authority figures and handled stress well. [(Tr. 272-74.)] In a September 2017 report, [Plaintiff] reported that she had increased stress at home and complained of panic attacks at night two to three times a week. [(Tr. 1045.)] Medical records for the period under consideration do not show that she has more than mild limitation in this area.
>
> . . .
>
> The fourth functional area is adapting or managing oneself. In this area, [Plaintiff] has a mild limitation. In a function report, [she] indicated that she could go out on her own and did not need to be reminded to go places. [(Tr. 264.)] As discussed [in

14

subsequent portions of the ALJ's decision], the record documents <u>violations of [Plaintiff]'s narcotic contracts</u>. However, [the ALJ] <u>do[es] not find emergency room records of injury from inability to see and avoid hazardous conditions or behaviors</u>. [Plaintiff]'s medical records for the period under consideration do not show that she has more than mild limitation in this area.

(Tr. 26-27.)

The above-quoted discussion clarifies why, notwithstanding finding Plaintiff <u>mildly</u> limited in interaction and adaptation, the ALJ did not include additional mental limitations in the RFC. Although the ALJ noted the reports of Plaintiff's altercation with a co-worker in the past and nighttime panic attacks, he also found the altercation "an isolated incident," noted that both Plaintiff and her husband denied that Plaintiff had problems getting along with others, and observed that Plaintiff's husband felt that Plaintiff "handled stress well." (Tr. 26.) With regard to adaptation, although the ALJ acknowledged Plaintiff's violations of her narcotics agreements, he pointed out that those violations had not resulted in injuries. (<u>See</u> Tr. 27.) The ALJ further noted that Plaintiff's "medical records . . . do not show that she received more than routine mental health care" and that she remained "able to take care of her personal grooming, cook quick meals, do basic cleaning, drive, shop, in stores, and handle money." (Tr. 26.)

Third, the ALJ's RFC discussion lends further support to the omission of additional mental restrictions in the RFC to account

for mild deficits in interaction and adaptation. After recounting the <u>physical</u> impairments Plaintiff listed in a disability report (Tr. 28 (noting that, "[i]n a March 2016 adult disability report, [Plaintiff] alleged that degenerative disc disease, status four back surgeries, post laminectomy syndrome, sacroiliitis, pyriformis syndrome, spondylosis with radiculopathy, and chronic pain syndrome limited her ability to work"); see also Tr. 252), the ALJ summarized Plaintiff's hearing testimony about her disabling impairments, which also did not identify any mental impairments (see Tr. 28, 48-70).[5] The ALJ additionally discussed Dr. Mary Bodea's observation in June 2018 that "Cymbalta was working well for [Plaintiff]'s depression" (Tr. 32; see also Tr. 719) and afforded "significant weight" (Tr. 32) to the opinion of the state agency psychological consultant at the initial level of review that Plaintiff's mental impairments qualified as non-severe (see Tr. 87).

In sum, as the ALJ's decision provides an "accurate and logical bridge," Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal quotation marks omitted), between the ALJ's findings of mild limitations in interaction and adaptation at step

_____

[5] At the outset of the hearing, Plaintiff's then-attorney conceded that Plaintiff's anxiety qualified as non-severe and did not even mention depression as an impairment. (Tr. 46.) Additionally, although Plaintiff described some difficulty with concentration and memory, as well as a tendency to stay by herself, that testimony occurred in the context of a discussion of Plaintiff's insomnia and pain rather than any mental impairment. (See Tr. 65-66.)

two of the SEP and the RFC, Plaintiff's first assignment of error
fails as a matter of law.

## 2. RFC

In Plaintiff's second and final issue on review, she faults
the ALJ for "fail[ing] to conduct a proper function-by-function
analysis of [Plaintiff]'s impairments and fail[ing] to provide a
logical bridge between the evidence in the record, his conclusions
and his RFC findings . . . that prevents the ALJ's conclusions
regarding [Plaintiff]'s RFC from being supported by substantial
evidence" (Docket Entry 12 at 12 (bold font and single-spacing
omitted)) in violation of Mascio, 780 F.3d at 636, and Social
Security Ruling 96-8p, Policy Interpretation Ruling Titles II and
XVI: Assessing [RFC] in Initial Claims, 1996 WL 374184 (July 2,
1994) ("SSR 96-8p") (Docket Entry 12 at 13). In particular,
Plaintiff argues that "the ALJ never addresse[d] or reconcile[d]
the evidence that [Plaintiff] experienced difficulty performing the
prolonged standing and other physical requirements of her job
duties as a Stylist on a part-time basis with his RFC findings."
(Id. at 15.) In that regard, Plaintiff contends that "the only
explanation [the ALJ] provided for his conclusion that
[Plaintiff]'s 'statements concerning the intensity, persistence and
limiting effects of [her] symptoms [we]re not entirely consistent
with the medical evidence and other evidence in the record' was
this: 'because although his [sic] impairments cause limitation they

17

do not preclude all work activity.'" (Id. at 14 (quoting Tr. 29).) Plaintiff further asserts that "the medical records support her allegations regarding her chronic pain and limitations, and if properly considered, would support an RFC that would not allow her to perform her past relevant work or any other work on a competitive, sustained basis." (Id.; see also id. at 15-16 (discussing evidence Plaintiff believes supports her claim of disability (citing Tr. 59-61, 64-65, 261, 277, 279, 280, 282, 287, 291, 397, 401, 403, 407, 475, 476, 480, 498, 500, 504, 506, 539, 595, 605, 609-11, 632, 651, 660, 663, 668, 671, 694, 697, 713, 1023-27, 1050-51)).) Those arguments fail to warrant reversal or remand.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c).

18

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio, 780 F.3d at 636–37. Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," Mascio, 780 F.3d at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the

19

record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, the ALJ's decision supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's back and hip impairments (A) qualified as severe (see Tr. 25) but (B) did not cause limitations greater than the standing and walking requirements of light work with, inter alia, an allowance to remain off-task for up to five percent of the workday to permit alternation between sitting and standing (see Tr. 28).

First, the ALJ's evaluation of the opinion evidence supports the RFC. In that regard, the ALJ noted that, although consultative physical examiner Dr. Joseph J. Umesi found a 15-degree decrease in Plaintiff's lumbar forward flexion due to pain and bilateral positive straight leg raising tests, Dr. Umesi also found that Plaintiff "had 5/5 strength in all extremities and intact sensation." (Tr. 29; see also Tr. 476, 478.) Significantly, the ALJ gave "significant weight" to Dr. Umesi's "opinion that [Plaintiff] did not need an assistive device at his examination, because it [wa]s consistent with his examination results." (Tr. 33 (emphasis added) (citing Tr. 477).) The ALJ also accorded "significant weight" (id.) to the opinion of the state agency medical consultant at the initial level of review that Plaintiff

20

could perform the standing and walking required by light work (see Tr. 89), but added environmental restrictions and limited Plaintiff to only occasional climbing of ramps and stairs (see Tr. 28).

Second, by pointing to record evidence Plaintiff believes supports greater limitations on her abilities to stand and walk, she misinterprets this Court's standard of review. The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's findings regarding Plaintiff's abilities to stand and walk, and not whether other record evidence weighs against those findings, see Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). Here, the ALJ's discussion of the medical evidence relating to Plaintiff's back and hip impairments makes clear that the ALJ properly considered the evidence regarding Plaintiff's abilities to stand and walk. In that regard, the ALJ noted that:

- "[a]n MRI taken on December 30, 2015, the day before [Plaintiff's] alleged onset date, did not reveal any disc herniation, significant central canal or foraminal stenosis, cord compression, or acute bony abnormality. The impression for that

21

report notes [Plaintiff]'s status post L5-SI [posterior lumbar interbody fusion] without residual stenosis. A December 30, 2015 emergency department report notes that [Plaintiff] complained that her narcotic medication was not effective. However, a review of a [s]tate controlled substances database did not reveal any prescription for narcotics from a pain management specialist in the preceding six-month period, and her MRI was negative for acute findings" (Tr. 29 (internal citations omitted) (citing Tr. 952-54));

- Plaintiff's "treatment records document instances of narcotic pain management contract violations. Nevertheless, she continued to receive pain management treatment despite those violations, and benefitted from that treatment. . . . [T]hose records [do not] show that her chronic pain persisted at a level of severity that would reasonably preclude work within the [RFC]" (id. (internal citations omitted) (citing Tr. 512-36, 609-75));

- "[a] report for a September 17, 2016 MRI of [Plaintiff]'s lumbar spine . . . notes good appearance of the decompression, discectomy and fusion at L5-S1 and mild adjacent segment degenerative disc disease at L4-L5" (Tr. 30 (citing Tr. 742));

- Plaintiff reported to Dr. Bodea in April 2017 that the "regimen of Fentanyl and oxycodone had been fairly effective with no side effects" and, although Plaintiff "had 4/5 strength in her right lower extremity," she "had a non-painful and full range of motion in her hips, and negative straight leg raising tests" (Tr. 31-32 (internal citations omitted) (citing Tr. 604-05));

- "In an April 20, 2018 report, Courtney Forcucci, PA, a primary care provider, noted that [Plaintiff] reported that she exercised by walking in the evening and usually walked for 20 to 30 minutes a day" (Tr. 32 (citing Tr. 1038)); and

- Plaintiff's "medical records for the period under consideration [do not] show that she required an

22

assistive device for a continuous 12-month period. In his May 8, 2016 [s]tate agency consultative examination report, Dr. Umesi stated that [Plaintiff] did not need an assistive device at his examination. In a September 27, 2016 report, Dr. Jones noted that [Plaintiff] reported that she had fallen 12 times in the preceding year, and that her falls resulted in back pain. However, a September 12, 2016 report from that source noted that she reported one fall in the last year. Dr. Jones noted that [Plaintiff] reported falling, and noted that with respect to assistive devices, he advised [Plaintiff] to use safety measures when available. Dr. Jones appeared to base his advice on [Plaintiff]'s subjective complaints" (Tr. 31 (internal citations omitted); <u>see also</u> Tr. 477, 728, 731).

That analysis suffices to show that the ALJ complied with <u>Mascio</u> and SSR 96-8p by appropriately evaluating Plaintiff's ability to stand and walk.

For these reasons, Plaintiff's second issue on review falls short.

## III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 11) be denied, that Defendant's

Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that judgment be entered dismissing this action.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

February 2, 2021